**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

CINCINNATI INSURANCE COMPANY,
an Ohio corporation;

         Plaintiff,

v.                                Case no.:

Aspen Block, LLC, a New Mexico limited
liability company, Aspen Construction, LLC, a
New Mexico limited liability company, D.R.
Horton, Inc, a Delaware corporation, D.R.
Horton Southwest Construction, Inc., a
California corporation, United Specialty
Insurance Company, a Delaware company and
Colony Insurance Company, a Virginia
corporation,

         Defendants.

**PLAINTIFF'S COMPLAINT AND JURY DEMAND**

COMES NOW Plaintiff, The Cincinnati Insurance Company, (hereinafter "CIC") by and

through counsel, and hereby submits it Complaint and Jury Demand as follows:

**PARTIES**

1.      The Cincinnati Insurance Company ("CIC"), is an Ohio corporation with its

principal place of business in Ohio and is duly authorized to transact business in the State of

New Mexico.

2.      Plaintiff is informed and believes, and on that basis alleges, that Colony Insurance

Company ("Colony") was and is a Virginia corporation with a principal place of business in

Chicago, Illinois. Colony merged with Peleus Insurance Company, a Virginia corporation,

effective July 1, 2025.  Upon information and belief Peleus Insurance Company is no longer in existence. Upon information and belief, Colony is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

3.    Plaintiff is informed and believes, and on that basis, alleges that United Specialty Insurance Company ("USIC") was and is a Delaware corporation with its principal place of business in Texas. Upon information and belief, USIC is and was at all times mentioned herein eligible to do business as an insurer in the State of New Mexico, and may be served with this Complaint by and through the Superintendent of Insurance of the State of New Mexico pursuant to Section 59A-5-32 NMSA 1978.

4.    Aspen Block, LLC ("Aspen Block") is a New Mexico limited liability company with a principal place of business in Albuquerque, New Mexico and may be served with process by serving its registered agent, James Griffin, at 116 Mountain Park Pl. NW, Albuquerque, New Mexico 87114, or at such other address where it, its owner(s), officer(s), or registered agent(s), if any, may be found.

5.    Defendant Aspen Construction, LLC ("Aspen Construction") is a New Mexico limited liability company with a principal place of business in Albuquerque New Mexico that may be served with process by serving its registered agent, Gerardo Sanchez, at 5000 San Timoteo Ave. NW, Albuquerque, New Mexico 87114, or at such other address where it, its owner(s), officer(s), or registered agent(s), if any, may be found.

6.      Defendant D.R. Horton, Inc. ("DRH") is a Delaware corporation with a principal place of business in Arlington, Texas that may be served with process by serving its registered agent, THE CORPORATION TRUST COMPANY, Corporation Trust Center, 1209 Orange Street, Wilmington, DE, 19801.

7.      Defendant D.R. Horton Southwest Construction, Inc. ("DRHSouthwest") is a California corporation with a principal place of business in Arlington, Texas that may be served with process by serving its registered agent, C T CORPORATION SYSTEM, 330 N. Brand Blvd., Suite 700, Glendale, CA 91203. Defendants DRH and DRHSouthwest are collectively referred to as the "DR Horton".

## JURISDICTION AND VENUE

8.      This Court has original jurisdiction over this action founded on diversity of citizenship pursuant *28 U.S.C. § 1332*, because the matters in controversy exceed $75,000.00 per defendant, exclusive of interest and costs, and because complete diversity exists between CIC and Defendants.

9.      Venue is proper in this Court in accordance with *28 U.S.C. § 1391*.

## GENERAL ALLEGATIONS

10.      This is an action for declaratory relief pursuant to *28 U.S.C. §2201, et seq.*

11.      In this complaint, CIC seeks a declaration that there is no coverage under the Commercial General Liability policies issued to its insureds, Aspen Block and Aspen Construction (hereinafter collectively "named insureds"), and DR Horton, as an additional insured, and a declaration that co-insurers, USIC and Colony (formerly Peleus Insurance

Company) owe indemnity and defense to CIC in relation to claims made by homeowners against DR Horton and DR Horton's claims against the named insureds arising from the allegedly defective construction work at the Enchanted Hills Project, Rio Rancho, New Mexico (the "Project").

## THE MARQUES CLAIMS

12.    This complaint for declaratory relief arises from certain claims asserted against DR Horton brought by homeowners for the Project pending before the American Arbitration Association, Case No. 01-24-0007-5681, alleging damages as a result of defective construction (hereinafter the "*Marques* matter").

13.    DR Horton joined several subcontractors, including CIC's named insureds, seeking indemnity for any damages assessed against it in the *Marques* matter.

14.    At all times relevant hereto, CIC provided a defense to its named insureds in the *Marques* matter, subject to a reservation of rights.

15.    DR Horton tendered its defense and indemnity to CIC, in respect of allegations of construction defect in the *Marques* matter which allegedly implicate the scope of work of CIC's named insureds.

16.    On receipt of those tenders, CIC acted promptly, responded to DR Horton and initiated and continued a coverage investigation to determine whether the allegations in the *Marques* matter constituted an "occurrence" which could result in damages awarded against the named insureds which would be within the scope of indemnity coverage provided by the terms of the policies.

**CIC POLICIES**

17.     CIC issued the following policies, subject to their terms, conditions, exclusions, limitations and not otherwise:

a.     Aspen Block, Policy No. EPP0118587, effective 1/1/12-1/1/19);

b.     Aspen Construction, Policy No. EPP0058469, effective 11/1/10-11/1/18;

The aforementioned policies are hereinafter collectively referred to herein as the "CIC Policies". A certified copy of the Commercial General Liability Coverage Form, GA 101 12 04, issued to the above named insureds is attached hereto as Exhibit A[1].

18.     The CIC Policies contain the following language in regards to coverage:

A. Applicable Coverage Provisions, Coverage A, Property Damage Liability
SECTION I – COVERAGES 1. Insuring Agreement
a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.
b. This insurance applies to [] "property damage" only if: (1) The [] "property damage" is caused by an "occurrence" that takes place in the "coverage territory." (2) The... "property damage" occurs during the policy period; and (3) Prior to the "coverage term" in which "property damage" occurs, you did not know . . . that the "property damage" had occurred or had begun to occur, in whole or in part.

Ex. A, pg. 1 of 22.

19.     The CIC policies contain the following pertinent definitions:

---

1   The CIC policies issued to the named insureds are written on the same Commercial General Liability Coverage form, GA 101 12 04.

SECTION V – DEFINITIONS

16. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

20. "Property damage" means:
a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or
b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

21."Suit" means a civil proceeding in which money damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:
a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent;
b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent; or
c. An appeal of a civil proceeding.

25. "Your product":
a. Means:
(1) Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:
(a) You;
(b) Others trading under your name; or
(c) A person or organization whose business or assets you have acquired; and
(2) Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.
b. Includes:
(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and
(2) The providing of or failure to provide warnings or instructions.

26. "Your work":
a. Means:
(1) Work or operations performed by you or on your behalf; and
(2) Materials, parts or equipment furnished in connection with such work or operations.
b. Includes:

(1) Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and
(2) The providing of or failure to provide warnings or instructions.

Ex. A at pgs. 19-20 of 22.

20.     Under the policy terms, CIC has "no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply" and "may, at [its] discretion, investigate any "occurrence" and settle any claim or suit that may result." Ex. A at pg. 1 of 22.

21.     The CIC polices include the following exclusions which operate to limit the available coverage:

2. Exclusions
This insurance does not apply to:

j. DAMAGE TO PROPERTY
"Property damage" to:
(5) That particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the "property damage" arises out of those operations; or
(6) That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

k. DAMAGE TO YOUR PRODUCT
"Property damage" to "your product" arising out of it or any part of it.

l. DAMAGE TO YOUR WORK
"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".
This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

m. DAMAGE TO IMPAIRED PROPERTY OR PROPERTY NO PHYSICALLY INJURED

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:
(1) A defect, deficiency, inadequacy, or dangerous condition in "your product" or "your work"; or
(2) A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

Ex. A at pgs. 2, 5, 6 of 22.

22.     The CIC policies also contain the following endorsement:

EXCLUSION - CONTRACTORS - PROFESSIONAL LIABILITY
This insurance does not apply to . . . "property damage" . . . arising out of the rendering of or failure to render any professional services by you or on your behalf, but only with respect to either or both of the following operations:
a. Providing engineering, architectural or surveying services to others; and
b. Providing, or hiring independent professionals to provide engineering, architectural, or surveying services in connection with construction work you perform.
2. Subject to Paragraph 3., below, professional services include:
a. Preparing, approving, or failing to prepare or approve, maps, shop drawings, opinions, reports, surveys, field orders, change orders, or drawings and specifications; and
b. Supervisory or inspection activities performed as part of any related architectural or engineering activities.

A copy of the Exclusion-Contractors-Professional Liability form GA 340 10 01 is

attached hereto as Ex. B[2].

23.     DR Horton entered into contracts with CIC's named insureds pursuant to a New

Mexico Independent Contractor Agreement (hereinafter "Subcontract").

24.     The subcontract between DR Horton and CIC's named insureds contain the

following indemnity provision:

---

2   The Exclusion-Contractors-Professional Liability was written on the same form, GA 340 10 01 for both the named insureds.

GENERALLY. TO THE FULLEST EXTENT PERMITTED BY LAW, CONTRACTOR SHALL PROTECT, DEFEND, INDEMNIFY, AND HOLD OWNER AND OWNER'S PARENT CORPORATION … HARMLESS FROM AND AGAINST ANY AND ALL CLAIMS, DEMANDS, LAWSUITS OR OTHER LITIGATION. . .  ON ACCOUNT OF . . . DAMAGE TO OR LOSS OF TANGIBLE OR INTANGIBLE PROPERTY . .  THEREOF IN ANY WAY OCCURRING, INCIDENT TO, ARISING OUT OF, OR IN CONNECTION WITH: (1) A BREACH OF ANY WARRANTIES, REPRESENTATIONS, COVENANTS OR OTHER OBLIGATIONS OF CONTRACTOR SET FORTH IN THIS AGREEMENT; (b) THE WORK, AS DEFINED IN SECTION 1 . . . (c) ANY NEGLIGENT OR INTENTIONAL ACT OR OMISSION OF CONTRACTOR OR ANY OF CONTRACTOR'S EMPLOYEES. …. CONTRACTOR'S DUTY TO DEFEND IS A SEPARATE, DISTINCT, AND INDEPENDENT OBLIGATION FROM IT'S DUTY TO INDEMNIFY AND IS TRIGGERED IMMEDIATELY WHEN ANY CLAIM, DEMAND, OR OTHER ASSERTION OF LIABILITY IS MADE AGAINST INDEMNITEE WHICH POTENTIALLY OR ARGUABLY IS SUBJECT TO CONTRACTOR'S DUTY TO INDEMNIFY, REGARDLESS OF CONTRACTOR'S ULTIMATE LIABILITY FOR INDEMNITY.…. NOTWITHSTANDING THE FOREGOING, NOTHING HEREIN SHALL REQUIRE CONTRACTOR TO INDEMNIFY, HOLD HARMLESS, INSURE OR DEFEND INDEMNITEE AGAINST LIABILITY, CLAIMS, DAMAGES, LOSSES OR EXPENSES. INCLUDING ATTORNEY FEES ARISING OUT. . . OR DAMAGE TO PROPERTY CAUSED BY OR RESULTING FROM, IN WHOLE OR IN PART, THE NEGLIGENCE, ACT OR OMISSION OF INDEMNITEE;

25.     DR Horton tendered the defense and indemnity of the homeowner claims asserted against it in the *Marques* matter to the named insureds, as an additional insured under the policies issued by CIC to the named insured subcontractors.

26.     The named insureds sent the DR Horton tenders to CIC and CIC initiated a coverage investigation in lieu of accepting or denying DR Horton's tender.

27.     In DR Horton's joinder of Aspen Block and Aspen Construction in the *Marques* matter, DR Horton alleges that Aspen Block and Aspen Construction have agreements with DR Horton  "to indemnify, hold harmless and defend Respondents from all claims for damages

related to the work performed and/or the materials supplied under their respective Contractor Agreements."

29.    The allegations in the *Marques* matter do not allege defects in the work of CIC's named insureds that caused damage to "other property" which could result in damages awarded against the named insureds which would be within the scope of indemnity provided by the terms of the policies.

30.    Coverage available to the Aspen Block and Aspen Construction extends only to their liability for damages caused by them and caused to other property that is not the work product of the named insureds. See Ex. A- Exclusion l (Damage to Your Work) at pg 6.

31.    DR Horton, as an additional insured under the CIC Policies, is entitled to no greater coverage than the CIC named insureds. Coverage available to DR Horton under the CIC Policies, if any, extends only to DR Horton's liability for damages caused by the named insureds and caused to other property that is not the work product of the named insureds. See Ex. A- Exclusion l (Damage to Your Work) at pg 6.

32.    The CIC Policies do not cover DR Horton's own liability arising from its own acts and omissions.

33.    DR Horton, as an additional insured under the CIC Policies by operation of the subcontract agreement, is bound by the terms and conditions of the CIC Policies and it is entitled to no more coverage than CIC's named insureds. DR Horton is not entitled to coverage under the CIC Policies for property damage arising from the work of any of the other subcontractors. In other words, to the extent DR Horton is facing liability "arising from" or "related to" the work of

any other subcontractor, there can be no coverage under the CIC Policies.

34.    If DR Horton seeks defense and indemnity for its own direct liability arising from its own acts and omissions, its claims are expressly barred by the New Mexico anti-indemnification statute. § 56-7-1, NMSA 1978 (Repl. Pamp. 2021).

**SPECIFIC ALLEGATIONS APPLICABLE TO USIC AND COLONY**

35.    USIC issued the following policies of insurance to subcontractors who are or were mutually insured by both CIC and USIC including:

(a) <u>Insured: Aspen Block, LLC</u>

Policy No. ATNATL1811742; Policy Period: 1/01/19 – 1/01/240
Policy No. ATN2025620; Policy Period: 1/01/20 – 1/01/21
Policy No. ATN2137313; Policy Period: 1/01/21 – 1/01/22
Policy No. ATN2241114; Policy Period: 1/01/22 – 1/01/23
Policy No. ATN2355613; Policy Period: 1/01/23 – 1/01/24
Policy No. ATN2467907; Policy Period: 1/01/24 – 1/01/25

(b) <u>Insured: Aspen Construction, LLC</u>

Policy No. ATN1915397; Policy Period: 11/1/19-11/1/20
Policy No. ATN2027016; Policy Period: 11/1/20-2/15/21

36.    Colony issued the following policy of insurance to subcontractors who are or were mutually insured by both CIC and Colony including:

(a).<u>Insured: Aspen Construction, LLC</u>

Policy No. 103GL002628100; Policy Period: 11/1/18-11/1/19

37.    CIC tendered to USIC and Colony as co-insurers of the mutually insured subcontractors and requested that USIC and Colony contribute to the defense and indemnity of

the mutually insured subcontractors according to the terms of their respective policies issued to the mutually insured subcontractors.

38.     USIC has denied CIC's tender and request for contribution to the defense and indemnity of the mutually insured subcontractors Aspen Block and Aspen Construction.

39.     Colony has not agreed to CIC's tender and request for contribution to the defense and indemnity of the mutually insured subcontractor Aspen Construction.

## FIRST CAUSE OF ACTION FOR DECLARATORY RELIEF
### (Against Aspen Construction, Aspen Block and DR Horton)

40.     CIC realleges the allegations contained in paragraphs 1 through 39 and incorporates them by reference as though fully set forth herein.

41.     There is an actual controversy between Aspen Block, Aspen Construction and DR Horton, and CIC regarding whether the *Marques* demand for arbitration alleges facts, and/or whether there are facts, which demonstrate that there was an occurrence which could result in damages awarded against the named insureds which would be within the scope of indemnity provided by the terms of the subject polices.

42.     The Court should declare that the allegations in the *Marques* matter do not allege facts which show an occurrence during the policy periods which could result in damages awarded against the named insureds which would be within the scope of indemnity provided by the terms of the subject polices.

43.     The Court should declare that the pleadings and facts that have been developed or evidence presented tend to show there was no occurrence during the policy periods which could

result in damages awarded against the named insureds which would be within the scope of indemnity provided by the terms of the subject polices.

44.    CIC seeks a judicial determination of its rights and obligations under the CIC Policies with respect to its duty to defend and indemnify its named insureds, Aspen Block and Aspen Construction for any damages awarded in the *Marques* matter against them.

45.    The Court should also declare that CIC has fulfilled, and is fulfilling, its duty to investigate DR Horton's tenders of defense and indemnity, and because facts have not been presented, developed, or reasonably discovered, sufficient for the Court to determine whether the duty to defend and indemnify has been triggered.

46.    CIC also seeks a judicial determination of its rights and obligations under the CIC Policies with respect to its duty to defend DR Horton and indemnify it for any damages awarded in the *Marques* matter against DR Horton.

WHEREFORE, CIC seeks Declaratory Relief against Aspen Block, Aspen Construction and DR Horton and prays for judgment as follows:

1.    For a judicial determination that CIC has no obligation to indemnify Aspen Block, Aspen Construction and DR Horton for any judgment or settlement reached in the *Marques* matter;

2.    For a judicial determination that the CIC Policies provide no coverage to Aspen Block, Aspen Construction and DR Horton for the claims asserted in the *Marques* matter;

3.    For reasonable attorneys' fees incurred herein;

4.    For costs incurred herein; and

5.    For any other and further relief as this Court may deem just and proper.

## SECOND CAUSE OF ACTION FOR DECLARATORY RELIEF
### (Against USIC And Colony)

47.    CIC realleges the allegations contained in paragraphs 1 through 46 and incorporates them by reference as though fully set forth herein.

48.    CIC, USIC and Colony insured "the mutually insured subcontractors" under the above referenced commercial general liability policies.

49.    The *Marques* matter alleges an occurrence of defective construction by DR Horton and the mutually insured subcontractors allegedly resulting in damages.

50.    CIC is defending the mutually insured subcontractors subject to a reservation of rights.

51.    CIC requested that USIC and Colony contribute to the defense and indemnity of the mutually insured subcontractors based on a Time on Risk analysis.

52.    Despite the demands for contribution, USIC and Colony are not currently contributing to the defense of the mutually insured subcontractors. CIC is therefore bearing the full burden of that defense, has incurred fees and costs defending the mutually insured subcontractors, and is continuing to incur fees and costs as the case progresses.

53.    CIC's defense and indemnity obligations to the mutually insured subcontractors, and potentially to DR Horton as an additional insured  - the costs it incurs paying defense and indemnity on behalf of the named insureds - are affected by the insurance contracts issued by USIC and Colony to the mutually insured subcontractors.

54.    CIC may have determined any question of construction or validity of the USIC and Colony insurance contracts and obtain a declaration of CIC's rights, status or other legal relations in relation to those insurance contracts.

55.    Pursuant to *28 U.S. Code § 2201, et seq*, CIC seeks a judicial resolution of the controversy and a declaration of the following:

(a) CONTRIBUTION. USIC and Colony must contribute to the defense of the mutually insured subcontractors, for both past and ongoing defense fees and costs based on their Time on Risk;

(b) INDEMNITY. USIC and Colony must also indemnify the mutually insured subcontractors - or contribute to costs of indemnity paid by CIC - in respect of damages to "other property" arising out of the work or product of the mutually insured subcontractors; and,

(c) ADDITIONAL INSURED EXPOSURE. DR Horton tendered its defense and indemnity to CIC as an additional insured under the policies issued to the mutually insured subcontractors. CIC has neither accepted nor rejected the tender by DR Horton. CIC is conducting a coverage investigation to determine if there is evidence of an occurrence which could result in damages awarded against the mutually insured subcontractors which would be within the scope of defense and indemnity provided by the terms of the policies (to which the insurance applies). In the event CIC fails in its request for declaratory relief it seeks against DR Horton for defense and indemnity, then USIC and Colony must contribute to the defense and indemnity of

DR Horton based on DR Horton's status as an additional insured under the USIC and

Colony policies issued to the mutually insured subcontractors.

## PRAYER FOR RELIEF

WHEREFORE CIC prays for judgment against USIC and Colony as follows:

1.      For declaratory relief as described above;

2.      For costs and expenses as permitted by law;

3.      For pre-judgment interest and post-judgment interest;

4.      For attorney fees to the extent recoverable by law; and

5.      For such other and further relief as the Court deems fair and proper.

### Plaintiff demands a Jury Trial.

Respectfully submitted this 26th day of June, 2026.


**EVANS & CO.**

*/s/ JoHanna C. Cox*
JoHanna C. Cox, Esq., Of Counsel
2844 East Main St., Suite 106, #283
Farmington, NM 87402
Phone: 505-566-9400
Fax: 877-585-1401
Email: jcox@evanslawfirm.com
*Attorneys for Cincinnati Insurance
Company*